617 S.E.2d 831

**Juanita BUDA, James and Pamela Friend, James and Janice Polce, Harold and Donna Rehe, and Terry and Sharalyn Shreve, Plaintiffs Below, Appellants,**

v.

**TOWN OF MASONTOWN, Defendant Below, Appellee.**

**No. 31779.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 8, 2005.

Filed: March 22, 2005.

Melvin C. Snyder, III, Esq., Kingwood, for Appellants.

Sheila Kae Williams, Esq., Kingwood, for Appellee.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM.

Appellants appeal the April 25, 2003, order of the Circuit Court of Preston County that denied Appellants' complaint for declaratory judgment and ruled that Appellee Town of Masontown complied with all notice requirements prior to its approval of a new sewer system to which Appellants are compelled to connect. For the reasons that follow, we affirm the circuit court.

## I.

### FACTS

Appellants and plaintiffs below [1] are Preston County citizens who live a short distance outside of Appellee Town of Masontown (hereafter "Appellee," "Masontown," or "Town"). Appellee avers that Appellants are residents of an unincorporated area known as the Bretz area.[2] Appellants, on the other

---

1. Appellants herein are Juanita Buda, James and Pamela Friend, James and Janice Polce, Harold and Donna Rehe, and Terry and Sharalyn Shreve.

2. The circuit court found that Appellants live in the "Masontown–Bretz" area.

hand, claim that they do not live in the Bretz area but that their area of residence is separated from Masontown by the Bretz area. The parties agree, however, that Appellants do not live within the corporate limits of Masontown. Appellants are not currently connected to any sewer system, but instead have individual septic systems.

On December 21, 1999, Appellee filed with the Public Service Commission (hereafter "PSC") an application for a certificate of convenience and necessity for the construction of a new sewer system. On January 5, 2000, a legal notice of Masontown's application for a certificate of convenience and necessity appeared in *The Preston County Journal*, a weekly newspaper of general circulation. By final order dated January 23, 2000, the PSC approved Masontown's application. The certificate of convenience and necessity indicates that the sewer project is funded through revenue bonds and grants pursuant to W.Va.Code § 16–13–1 *et seq.*

The revenue bonds of Masontown were created by ordinance pursuant to W.Va.Code § 16–13–5 (1933) and adopted by Masontown's council on July 11,.2001. Pursuant to W.Va.Code § 16–13–6 (1981), legal notice of the ordinance was published in *The Preston County Journal* on July 18, and July 25, 2001, and a public hearing was held on the ordinance on July 30, 2001.

In July of 2002, Appellants filed a complaint for declaratory judgment in the Circuit Court of Preston County requesting the circuit court to declare that they could not be compelled pursuant to W.Va.Code § 8–18–22 (1999) [3] to connect to Masontown's new sewer system. Under W.Va.Code § 8–18–22, the owner of a parcel which abuts on any street on which a municipal sewer is located may be compelled by the municipality to connect with the sewer [4] even if the parcel of land is located outside of the municipality. In their complaint, Appellants argued that Masontown failed to give proper notice under W.Va.

**3.** According to W.Va.Code § 8–18–22 (1999), in effect when the matters in this case arose:

> The owner or owners of any lot or parcel of land abutting on any street, alley, public way or easement on which a municipal· sewer is now located or may hereafter be constructed and laid (whether constructed and laid under the provisions of this article or any other provisions of law) upon which lot or parcel of land any business or residence building is now located or may hereafter be erected, not connected with a public sewer, may be required and compelled by the municipality or by the board of health to connect any such building with such sewer. Notice so to connect shall be given by the municipality or by the board of health to the owner and to the lessee or occupant of such building. Each day's failure to comply with such notice and connect with such sewer by such owner or owners, after thirty days from the receipt of such notice, shall be a misdemeanor and a separate and new offense under this section, and each such offense shall be punishable by a fine of not less than five nor more than twenty-five dollars. Jurisdiction to hear, try, determine and sentence for any violation of this section is hereby vested in the police or municipal court thereof when the lot or parcel of land is within the municipality, or, where no police court or municipal court exists, in the mayor thereof: Provided, That if said lot or parcel is located outside of the municipality, then jurisdiction shall be vested in the circuit court of the county wherein the lot or parcel is situated.

This code section was amended effective June 10, 2004. The amended version added, "Regardless of whether a lot or parcel is within any munici-

pality's geographical limits" to the first sentence. Also, the new version deletes the third and fourth sentences concerning fines for failure to connect within specified time periods and who has jurisdiction to try the alleged violations for failure to connect. Finally, the new version adds the following:

> The owner or owners shall connect to the municipal sewer within thirty days after notice to connect has been sent by the municipality. Regardless of whether the owner or owners connect to such sewer, the municipality may bill the owner or owners of the lot or parcel *and the owner or owners shall pay the municipality's charge based on the actual water consumption on the lot or parcel. If the lot or parcel is not metered, the municipality's charge shall be based on the municipality's good faith estimate of the consumption on the lot or parcel.*

Appellants do not challenge the constitutionality of this code section.

**4.** According to W.Va.Code § 16–13–1 (2001), municipalities have the authority to own, acquire, construct, equip, operate and maintain sewer systems "within and/or without" their corporate limits. In addition, W.Va.Code § 16–13–22 (2001), provides that municipalities have jurisdiction for the purposes of sewage and stormwater works 20 miles outside their corporate limits in areas from which stormwater affects or drains into the municipality. Appellants do not challenge the constitutionality of these provisions.

Code § 8–18–3 (1969), prior to the Town's resolution to apply to the PSC for a certificate of convenience and necessity, that Appellants' properties would be affected by the new sewer system.

After oral argument and the submission of legal memoranda with accompanying documents and affidavits, the circuit court of Preston County denied Appellants' complaint for declaratory judgment. Specifically, the circuit court found that Masontown did not fund its sewer system by an assessment on abutting landowners. As a result, the notice provision of W.Va.Code § 8–18–3 does not apply. Instead, the circuit court found that the sewer system was funded with bonds and grants pursuant to W.Va.Code § 16–13–1. Accordingly, the notice provision in W.Va. Code § 16–13–6 (1981)[5] is applicable. The circuit court concluded:

> The Town of Masontown complied with all notice requirements under its application for Certificate of Convenience and Necessity and Revenue Bond Ordinance. While the matter of notices to Plaintiffs could have been better handled and could have been more specific, the Court finds and concludes that the Plaintiffs did have notice of [Masontown's] application for Certificate of Convenience and Necessity, did have the right to protest to the PSC, and did receive all notices required by the PSC and the West Virginia Code.

Shortly after the circuit court's ruling, Appellants received notices from Masontown that they must connect to the new sewer system. Appellants now appeal the circuit court's order denying them declaratory relief.

## II.

### STANDARD OF REVIEW

This Court has held,

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 2, *Walker v. West Virginia Ethics Com'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997). With these standards in mind, we now review the circuit court's order.

## III.

### DISCUSSION

The sole issue before this Court is whether Masontown gave proper notice to Appellants, prior to approval of its new sewer system, that Appellants would have to connect to the system. Appellants first assert that they were due personal notice and an opportunity to be heard under constitutional due process

---

5. Pursuant to W.Va.Code § 16–13–5 (1933), before a municipality constructs a sewer system, it must enact an ordinance which, *inter alia,* directs that revenue bonds shall be issued in such an amount as may be necessary to pay for the cost of the sewer system. Concerning notice of this ordinance, W.Va.Code § 16–13–6 (1981) states:

> After such ordinance shall have been adopted, an abstract of the ordinance, determined by the governing body to contain sufficient information as to give notice of the contents of such ordinance, together with the following described notice, shall be published as a Class II legal advertisement in compliance with the provisions of article three [§§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the municipality. The notice shall state that said ordinance has been adopted, and that the municipality contemplates the issuance of the bonds described in the ordinance, and that any person interested may appear before the governing body upon a certain date, which shall not be less than ten days subsequent to the first date of publication of such abstract and notice which shall not be prior to the last date of publication of such abstract and notice, and present protests. At such hearing all objections and suggestions shall be heard and the governing body shall take such action as it shall deem proper in the premises: Provided, however, That if at such a hearing written protest is filed by thirty percent or more of the owners of real estate situate in said municipality, then the governing body of said municipality shall not take further action unless four fifths of the qualified members of the said governing body assent thereto.

The circuit court found, and the record shows, that Masontown published a legal notice of the public hearing on the bond ordinance in *The Preston County Journal* on July 18 and July 25, 2001.

**288**

principles. According to Appellants, they have a property interest which is affected by the requirement that they connect to the new sewer system. Specifically, they will lose the value of their existing septic systems and will be required to permanently pay monthly sewage fees over which they have little or no control. Therefore, Appellants claim that Masontown was required to provide them with personal notice and a hearing on the proposed sewer system prior to the Town's application to the PSC for a certificate of convenience and necessity.

■ We find no merit to Appellants' constitutional argument. First, we do not believe that the mandatory connection to Masontown's new sewer system and the resulting abandonment of Appellants' septic systems constitute a taking for constitutional purposes. This Court long ago recognized that "[u]ncompensated obedience to a regulation enacted for the public safety, or which may hereafter be enacted, under the police power of the state, is not a taking or damaging without just compensation of private property, or private property affected with a public interest." Syllabus Point 7, *City of Welch v. Norfolk & W. Ry. Co.,* 104 W.Va. 660, 140 S.E. 839 (1927). Clearly, it is within the police power of the State to regulate sewer systems and to delegate this power to subordinate public entities such as municipalities. *See West Virginia Water Service Co. v. Cunningham,* 143 W.Va. 1, 98 S.E.2d 891 (1957) (holding that a municipal ordinance creating a sanitary board and authorizing this board to contract for the construction of a sewage system is within the police power of the State).

■ In *Kingmill Valley Public Serv. v. Riverview,* 182 W.Va. 116, 386 S.E.2d 483 (1989), we addressed the question of whether the owner of a private sewer system who has been compelled to join the sewer lines of a public service district may claim that the disuse of its system constitutes a *de facto* taking and recover its value from the public service district. In *Kingmill,* the appellant mobile home park alleged that the forced abandonment of its privately owned sewage treatment facility constituted an unlawful taking of private property in violation of Article III, Section 9 of the Constitution of West Virginia and sought to recover from the

public service district the value of its system which the parties stipulated to be worth $33,700.00. This Court concluded that the mandatory connection to the public service district's sewer system and the forced abandonment of the private system was not a taking and held in Syllabus Point 1 that "[a]ll citizens hold property subject to the proper exercise of the police power for the common good. Even where such an exercise results in substantial diminution of property values, an owner has no right to compensation therefor." Accordingly, we find that Appellants' mandatory connection to Masontown's sewer system and the forced abandonment of Appellants' septic systems do not amount to a constitutional taking of Appellants' property.

■ Second, we conclude that Appellants were not due personal notice and a hearing under constitutional principles prior to Masontown's approval of its new sewer system. In the *Kingmill* decision noted above, this Court discussed the case of *Hutchinson v. City of Valdosta,* 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520 (1913). In *Hutchinson,* the City of Valdosta, Georgia, passed an ordinance requiring owners of homes abutting upon any street along which sewer mains had been laid to install toilets in their houses and to connect the same to the public sewer lines within 30 days from the date of passage of the ordinance. In reviewing this ordinance, the Supreme Court found that it was a valid exercise of the police power and that it did not deny due process even though it afforded no prior personal notice or an opportunity to be heard. The Court explained:

> It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith.... It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health.

*Hutchinson,* 227 U.S. at 308, 33 S.Ct. at 292. "Numerous state courts have followed [the Supreme Court's] holding that personal notice and a hearing are not required prior to ordering connection to a public sewer system." *Alperstein v. Three Lakes Water & Sanitation,* 710 P.2d 1186, 1189 (Colo.Ct.App. 1985), *citing Nourse v. City of Russellville,*

257 Ky. 525, 78 S.W.2d 761 (1935); *Weber City Sanitation Commission v. Craft*, 196 Va. 1140, 87 S.E.2d 153 (1955); *Houpt v. County of Stephenson*, 63 Ill.App.3d 792, 20 Ill.Dec. 851, 380 N.E.2d 1060 (1978). In *Alperstein*, the court relied on *Hutchinson* in rejecting the plaintiffs' claim that the due process clauses of the United States and Colorado Constitutions prohibit the sanitation district from compelling any owners of property located within its boundaries to connect to its sewer lines absent individual notice and the opportunity to be heard at a judicial-type hearing. *See also McNeill v. Harnett Co.*, 327 N.C. 552, 398 S.E.2d 475 (N.C.1990) (concluding that statutes and ordinances which were passed without notice and an opportunity to be heard and which mandate connections to sewer lines as well as the payment of related connection charges and user fees are consistent with federal due process protections and are a valid exercise of the police power).

During oral argument before this Court, counsel for Appellants sought to distinguish *Hutchinson* from the instant case on the basis that the plaintiffs in *Hutchinson* who were compelled to connect to the town's sewer system lived within town limits whereas Appellants live outside the corporate limits of Masontown. We believe that this distinction is legally insignificant. The Supreme Court in *Hutchinson* hinged its decision on the police power of a state or a city to provide for sewer systems and to compel property owners to connect to these systems. Our Legislature has expressly provided municipalities with the authority to construct sewer systems outside of their corporate limits and to compel property owners located outside of their corporate limits to connect to those systems.[6] Accordingly, based on *Hutchinson* and the numerous decisions that follow *Hutchinson*, we find that Appellants had no constitutional due process right to personal notice and an opportunity to be heard before Masontown approved the construction of its new sewer system.

■ Next, Appellants assert that Masontown failed to give notice to them pursuant to W.Va.Code § 8–18–3 (1969), which provides, in part:

Before the adoption of such ordinance or resolution of necessity or convenience, the governing body shall cause notice to be given to owners of abutting property that such ordinance or resolution will be considered before adoption at a public meeting of the governing body at a date, time and place named in the notice and that all persons shall at that meeting, or an adjournment thereof, be given an opportunity to protest or be heard concerning the adoption or rejection of said ordinance or resolution. Such notice to owners of property abutting on the portion of the street, alley, public way or easement, or sewer right-of-way or easement, to be improved may be by service on such owners in the manner in which process commencing a civil action under the laws of this State is permitted to be served at least ten days before said meeting. In lieu of such service of such notice, the following described notice, or one in substantially the same form, may be given, and shall be deemed to have been served on all such owners of abutting property, by publication of such notice as a Class II legal advertisement in compliance with the provisions of article three [§§ 59–3–1 et seq.], chapter fifty-nine of this code, and the publication area for such publication shall be such municipality[.]

Appellee responds, and the circuit court found, that the notice provisions in W.Va. Code § 8–18–3, relied upon by Appellants, are not applicable here because these provisions apply only to sewer systems paid for by assessments on properties. Here, there are no such assessments. Rather, Masontown's new sewer system was paid for by grants and a bond issuance as provided for in W.Va. Code §§ 16–13–1, *et seq.*

■ The circuit court's construction of W.Va.Code § 8–18–3 is correct. We have held,

A statute should be so read and applied as to make it accord with the spirit, purposes, and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all

6. *See* n. 3 *supra*.

existing law applicable to the subject-matter, whether constitutional, statutory, or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syllabus Point 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908). Chapter 8, article 18 of the West Virginia Code pertains to, in relevant part, *assessments* to improve sewer systems. Specifically, W.Va.Code § 8–18–1 (1969) authorizes municipalities to construct sewer systems and to assess the cost on abutting property owners. According to W.Va.Code § 8–18–10 (1969), the property abutting the sewer right-of-way shall be subject to a lien, from the date of the ordinance or resolution laying the assessment, which has priority over all other liens except for land taxes due the State, county, municipality or preexisting special assessments.

The record shows that Masontown did not assess the cost of its new sewer system on abutting properties under W.Va.Code §§ 8–18–1 *et seq.* Instead, it funded its sewer project through revenue bonds and grants pursuant to W.Va.Code § 16–13–1 *et seq.* According to W.Va.Code § 16–13–1(a)(2)(b) (2001), municipalities are authorized to pay for construction of sewer systems and to issue bonds to pay the cost of the systems. Pursuant to W.Va.Code § 16–13–15 (1986), the payment of the bonds and interest thereon shall be paid from the revenues of the sewer system which have been placed in a special fund for solely that purpose. Therefore, because the cost of construction of Ma-

sontown's sewer system was not paid for by assessment of the cost on Appellants, they are not due notice and a hearing as set forth in W.Va.Code § 8–18–3.[7]

Appellants contend, however, that W.Va. Code § 8–18–3 applies because even though Masontown did not directly assess the costs of the sewer system, it issued bonds for the project which are paid off by the fees charged the users of the new system. This argument must fail. The Legislature clearly set forth the statutory meaning of "assessment" for the purposes of Chapter 8, article 18 of the West Virginia Code and it does not include the issuance of bonds to pay for a new sewer system which, as noted above, is provided for in a separate section of the West Virginia Code.[8]

In sum, we determine that Masontown did not violate constitutional due process principles in failing to give Appellants personal notice and an opportunity to be heard prior to approval of the construction of Masontown's new sewer system to which Appellants are compelled to connect.[9] We also find that Masontown did not err in failing to give notice and an opportunity to be heard pursuant to W.Va.Code § 8–18–3 inasmuch as that code section is not applicable to the financing of Masontown's sewer system.

■ Finally, we note that the issue herein is limited to the propriety and opportunity to be heard provided Appellants by Masontown. Appellants did not allege in their declaratory action below or before this Court that the Public Service Commission (hereafter "PSC") failed to give Appellants proper notice.[10]

---

**7.** In contrast, W.Va.Code § 8–18–22, set forth in n. 3, *supra, does* apply to compel Appellants to connect to Masontown's sewer system because, according to its plain terms, it applies to any municipal sewer "whether constructed and laid under the provisions of this article or any other provisions of law."

**8.** Also, Appellants argue that if the notice requirements of W.Va.Code § 8–18–3 are not applicable, Masontown had no statutory notice requirements which, they claim, is contrary to constitutional due process. We have previously disposed of Appellant's constitutional arguments.

**9.** Appellants also contend that their right to present evidence was denied by the circuit court in this matter because the circuit court did not hold an evidentiary hearing for Appellants to establish

that they did not receive actual or specific notice of the proposed sewer project. Because we have found no error in the circuit court's order, we do not deem it necessary to consider this issue.

**10.** According to W.Va.Code § 24–2–1 (2003), the PSC's jurisdiction extends to sewer systems servicing 25 or more persons or firms other than the owner of the sewer systems. No municipality shall construct a sewer system over which the PSC has jurisdiction until it obtains from the PSC a certificate of public convenience and necessity requiring construction of the new system. The PSC is to give notice of this application in the proposed area of operation by Class I legal advertisement which states that a formal hearing may be waived in the absence of protest, made within 30 days, to the application. *See* W.Va. Code § 24–2–11 (1983).

The record shows that Masontown filed its application for a certificate of convenience and necessity on or about December 21, 1999, and on January 5, 2000, the PSC published the required legal notice of the application in *The Preston County Journal.* This legal notice, however, nowhere specifies that the construction of the new sewer system will affect areas outside of Masontown's corporate limits. We believe that in the future it would be preferable for such legal notices to state with greater specificity the areas that will be affected by the construction of new sewer systems.[11] Specific notices by both the PSC and the municipalities seeking to construct new sewer systems will doubtless prevent the kind of misunderstandings and resulting litigation which occurred in this case.[12]

## IV.

## CONCLUSION

For the reasons set forth above, we affirm the April 25, 2003, order of the Circuit Court of Preston County that denied Appellants' complaint for declaratory judgment.

Affirmed.

11. We emphasize that the PSC should be extremely careful to ensure that the notice required by W.Va.Code § 24–2–11 is meaningful and effective. This means that the notice should indicate which persons in which areas will be affected by the proposed sewer project regardless of whether these persons are located inside or outside of the municipality applying for the certificate of public convenience and necessity.

12. There are exhibits in the record that appear to suggest that at least some of the Appellants had actual notice that Masontown's proposed new sewer system would include areas outside of the Town's corporate limits. For example, there is a copy of the minutes of a July 10, 1997, Masontown Town Council meeting in which it is recorded that Appellant Janice Polce and others who reside outside of Masontown questioned why their area had to be included in the proposed sewer project. There is also a copy of a petition which indicates that "We, the people of Bretz and outlying areas do not wish to be included in Masontown's waste water treatment project." Signatures on the list include those of Appellants Terry and Sharalyn Shreve and Janice Polce. Finally, there is a copy of a legal notice which appeared in *The Preston County Journal* on February 24 and March 3, 1999, the stated purpose of which was to provide notice to Masontown residents "and residents of the Bretz area on the plans for the sewer project."