671 S.E.2d 682

**DAVIS MEMORIAL HOSPITAL,**
**Petitioner Below, Appellant,**

v.

**WEST VIRGINIA STATE TAX**
**COMMISSIONER, Respondent**
**Below, Appellee.**

No. 33862.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 23, 2008.

Decided Oct. 14, 2008.

Charleston, and Robert A. Wilson, Jr., Wilson & Mills, LLC, Atlanta Georgia, for the Appellant Davis Memorial Hospital.

Darrell V. McGraw, Jr., Attorney General, L. Wayne Williams, Assistant Attorney General, Charleston, for the Appellee West Virginia State Tax Commissioner.

DAVIS, Justice:[1]

Davis Memorial Hospital (hereinafter referred to as "Davis Memorial"), Appellant and petitioner below, appeals from a decision of the Circuit Court of Randolph County that affirmed the denial of its claim for a refund of West Virginia consumers sales tax and West Virginia use tax paid for the year 2002. The circuit court affirmed the decision of the West Virginia State Tax Commissioner, respondent below and appellee (hereinafter referred to as "Tax Commissioner"), which interpreted the term "support," as defined in W. Va.Code § 11–15–9(a)(6)(F)(i)(II) (2007) (Supp.2008), as including Davis Memorial's receipts from patient revenues, also referred to as "exempt purpose income."[2] With its exempt purpose income included in the calculation of its "support," Davis Memorial does not qualify for an exemption from West Virginia sales tax and use tax. We agree with the Tax Commissioner's interpretation of the relevant statutes. Therefore, we affirm the circuit court's ruling upholding that interpretation.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Davis Memorial is an Internal Revenue Code § 501(c)(3) not-for-profit healthcare provider.[3] As such, Davis Memorial is ex-

Ancil G. Ramey, L. Frederick Williams, Robert L. Bailey, Steptoe & Johnson PLLC,

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright. Because Senior Status Justice McHugh is disqualified from participating in the instant case, the Honorable John A. Hutchison, Judge, will sit by temporary assignment.

2. Davis Memorial's exempt purpose income for the year 2002 equaled $64,180,500.00.

3. Davis Memorial's status as an I.R.C. § 501(c)(3) organization is not disputed. Pursuant to 26 U.S.C. § 501 (2001) (Main Vol.2002):

 (a) Exemption from taxation.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

empt from West Virginia sales tax and use tax [4] if it passes the "support test" set out in W. Va.Code § 11–15–9(a)(6)(C) (2007) (Supp. 2008),[5] *i.e.*, if it "annually receives more than one half of its *support* from any combination of gifts, grants, direct or indirect charitable contributions or membership fees." (Emphasis added). The issue presented in this case is the meaning of the term "support" as that term is described in W. Va.Code § 11–15–9(a)(6)(F)(i)(II).

W. Va.Code § 11–15–9(a) states in relevant part:

(a) .... The following sales of tangible personal property and services are exempt as provided in this subsection:

....

(6) Sales of tangible personal property or services to a corporation or organization which has a current registration certificate issued under article twelve [§§ 11–12–1 et seq.] of this chapter, which is exempt from federal income taxes under Section

....

(c) List of exempt organizations.—The following organizations are referred to in subsection (a):

....

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

4. As both parties to this appeal point out, the West Virginia Consumer Sales and Service Tax found in article fifteen of chapter eleven of the West Virginia Code, and the West Virginia Use Tax set out in article fifteen-A of chapter eleven, are intended to be complimentary. *See* W. Va. Code § 11–15–1a (1969) (Repl.Vol.2002) ("The Legislature hereby finds and declares that it is the intent of the legislature that the consumers sales tax imposed by the provisions of article

501(c)(3) or (c)(4) of the Internal Revenue Code of 1986, as amended, and which is:

....

(C) A corporation or organization which annually receives more than one half of its *support* from any combination of gifts, grants, direct or indirect charitable contributions or membership fees;

....

(F) For purposes of this subsection:

(i) *The term "support" includes, but is not limited to:*

(I) Gifts, grants, contributions or membership fees;

(II) *Gross receipts from fundraisers which include receipts from admissions, sales of merchandise, performance of services or furnishing of facilities in any activity which is not an unrelated trade or business within the meaning of Section 513 of the Internal Revenue Code of 1986, as amended;*

fifteen [§§ 11–15–1 et seq.] and the use tax imposed by the provisions of article fifteen-a [§§ 11–15A–1 et seq.], chapter eleven of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, be complementary laws and wherever possible be construed and applied to accomplish such intent as to the imposition, administration and collection of such taxes."); W. Va.Code § 11–15A–1a (1969) (Repl.Vol.2002) ("The Legislature hereby finds and declares that it is the intent of the legislature that the use tax imposed by the provisions of article fifteen-a [§§ 11–15A–1 et seq.] and the consumers sales tax imposed by the provisions of article fifteen [§§ 11–15–1 et seq.], chapter eleven of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, be complementary laws and wherever possible be construed and applied to accomplish such intent as to the imposition, administration and collection of such taxes."). The modern versions of these two statutes contain substantially the same language. *See* W. Va.Code § 11–15–1a (2003) (Repl.Vol.2005); W. Va.Code § 11–15A–1a (2003) (Repl.Vol.2005). Because these two tax schemes are complimentary, the decision with regard to Davis Hospital's exempt status pursuant to the "support" test applies to both the consumer sales tax and the use tax.

5. Although an earlier version of this statute governs this dispute, the relevant language of W. Va.Code § 11–15–9(a)(6) has not changed. Consequently, we will refer to the current version of the statute.

(III) Net income from unrelated business activities, whether or not the activities are carried on regularly as a trade or business;

(IV) Gross investment income as defined in Section 509(e) of the Internal Revenue Code of 1986, as amended;

(V) Tax revenues levied for the benefit of a corporation or organization either paid to or expended on behalf of the organization; and

(VI) The value of services or facilities (exclusive of services or facilities generally furnished to the public without charge) furnished by a governmental unit referred to in Section 170(c)(1) of the Internal Revenue Code of 1986, as amended, to an organization without charge. This term does not include any gain from the sale or other disposition of property which would be considered as gain from the sale or exchange of a capital asset or the value of an exemption from any federal, state or local tax or any similar benefit;

W. Va.Code § 11–15–9 (2007) (Supp 2008) (emphasis added).

On May 9, 2005, Davis Memorial filed a claim for a refund of West Virginia consumers sales tax and West Virginia use tax paid during the calendar year 2002. Davis Memorial sought the refund based upon its claim that it met the "support test" and, therefore, was exempt from paying State sales and use taxes. The amount of the refund sought for the calendar year 2002 is $799,501.16. The Tax Commissioner denied the claimed refund and Davis Memorial filed a timely appeal to the West Virginia Office of Tax Appeals (hereinafter referred to as "the OTA"). Following an administrative hearing, the OTA affirmed the Tax Commissioner's denial of the refund. The Administrative Law Judge presiding over the case [6] concluded that Davis Memorial was required to include receipts from patient revenues, i.e., its exempt purpose income, in calculating its support for purposes of claiming the tax exemptions set forth in W. Va.Code § 11–15–9(a)(6), and therefore, Davis Memorial did not meet the "support test" in that less than one-half of its support was received from "gifts, grants, direct or indirect charitable contributions or membership fees." It is undisputed that if Davis Memorial's exempt purpose income was not included in the calculation of its "support," then it would meet the support test and would be exempt from State sales and use taxes.

Davis Memorial appealed the OTA decision to the Circuit Court of Randolph County. The circuit court affirmed the OTA decision upholding the Tax Department's denial of the requested refund. Davis Memorial then appealed to this Court, and we now affirm.

## II.

### STANDARD OF REVIEW

■ Determining what is meant by the term "support," as that term is used in W. Va.Code § 11–15–9(a)(6)(F), presents a pure question of law. Therefore, this Court's review is *de novo*. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### DISCUSSION

■ The sole issue presented for resolution in this case is the meaning of W. Va. Code 11–15–9(a)(6)(f)(i)(II), which states:

(F) For purposes of this subsection:

(i) The term "support" includes, but is not limited to:

. . . .

(II) Gross receipts from fundraisers which include receipts from admissions, sales of merchandise, performance of services or furnishing of facilities in any activity which is not an unrelated trade or business within the meaning of Section 513 of the Internal Revenue Code of 1986, as amended[.]

Davis Memorial argues that the Legislature plainly limited the foregoing definition of support to "fundraisers," and then provided four specific types of funds obtained from

---

6. Robert W. Kiefer, Jr.

"fundraisers," namely: (1) admissions, (2) sales of merchandise, (3) performance of services, or (4) furnishing of facilities, all of which must be done in connection with an activity that is not an unrelated trade or business within the meaning of Section 513 of the Internal Revenue Code of 1986, as amended.[7] Because Davis Memorial's exempt purpose income is not a fundraiser, it reasons, exempt purpose income cannot possibly be included in the state-law support test.

To the contrary, the Tax Commissioner contends that the statute provides that the term "support" includes, but is not limited to, the six enumerated categories that follow, *i.e.* those appearing in W. Va.Code § 11–15–9(a)(6)(F)(i)(I) through (VI), and that the "gross receipts" specifically referred to in W. Va.Code § 11–15–9(a)(6)(F)(i)(II) include: (1) Receipts from admissions in any activity that is not an unrelated trade or business; (2) Receipts from sales of merchandise in any activity that is not an unrelated trade or business; (3) Receipts from the performance of services in any · activity that is not an unrelated trade or business; and (4) Receipts from furnishing of facilities in any activity

that is not an unrelated trade or business. Under this interpretation, Davis Memorial's exempt purpose income would be included within the meaning of support as receipts from the performance of services in any activity that is not an unrelated trade or business.

■ In deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't,* 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995). *See also* Syl. pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970) ("[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951) ("[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

■ Indeed, this Court has held that "[a] statute is open to construction only where

7. Pursuant to 26 U.S.C. 513:

(a) General rule.—The term "unrelated trade or business" means, in the case of any organization subject to the tax imposed by section 511, any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 (or, in the case of an organization described in section 511(a)(2)(B), to the exercise or performance of any purpose or function described in section 501(c)(3)), except that such term does not include any trade or business—

(1) in which substantially all the work in carrying on such trade or business is performed for the organization without compensation; or

(2) which is carried on, in the case of an organization described in section 501(c)(3) or in the case of a college or university described in section 511(a)(2)(B), by the organization primarily for the convenience of its members, students, patients, officers, or employees, or, in the case of a local association of employees described in section 501(c)(4) organized before May 27, 1969, which is the selling by the

organization of items of work-related clothes and equipment and items normally sold through vending machines, through food dispensing facilities, or by snack bars, for the convenience of its members at their usual places of employment; or

(3) which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions.

. . . .

(e) Certain hospital services.—In the case of a hospital described in section 170(b)(1)(A)(iii), the term "unrelated trade or business" does not include the furnishing of one or more of the services described in section 501(e)(1)(A) to one or more hospitals described in section 170(b)(1)(A)(iii) if—

(1) such services are furnished solely to such hospitals which have facilities to serve not more than 100 inpatients;

(2) such services, if performed on its own behalf by the recipient hospital, would constitute activities in exercising or performing the purpose or function constituting the basis for its exemption; and

(3) such services are provided at a fee or cost which does not exceed the actual cost of providing such services, such cost including straight line depreciation and a reasonable amount for return on capital goods used to provide such services.

the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

■ Both Davis Memorial and the Tax Commissioner contend that W. Va.Code 11–15–9(a)(6)(f)(i)(II) is a plainly worded statute. Therefore, they contend, its plain provisions should be applied. We disagree.[8] An examination of that section of the code reveals that the "language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions" and that the provision is "of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore*, 202 W.Va. at 596, 505 S.E.2d at 659. Accordingly, we find that W. Va.Code 11–15–9(a)(6)(f)(i)(II) is ambiguous. "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). *See also United Bank, Inc. v. Stone Gate Homeowners Ass'n, Inc.*, 220 W.Va. 375, 379, 647 S.E.2d 811, 815 (2007) ("statutory language that is ambiguous must be construed before it can be applied.").

■ When endeavoring to construe the meaning of an ambiguous statute, we must be mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *See also* Syl. pt. 1, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is

ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

■ In ascertaining the legislative intent behind W. Va.Code 11–15–9(a)(6)(f)(i)(II), we first consider what the Legislature has stated its intent to be with respect to the general law of which this provision is a part:

> "[a] statute should be so read and applied as to make it accord with the spirit, purposes, and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law applicable to the subject-matter, whether constitutional, statutory, or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Syl. pt. 3, *Buda v. Town of Masontown*, 217 W.Va. 284, 617 S.E.2d 831 (2005). Thus, we find it pertinent that, in W. Va.Code § 11–15–1 (1939) (Repl.Vol.2005), the Legislature has expressly stated that "[t]he purpose of this article is to *impose* a general consumers sales and service tax." (Emphasis added). Furthermore, the Legislature has stated that "[t]o prevent evasion, it shall be presumed that *all* sales and services are subject to the tax until the contrary is *clearly established.*" W. Va.Code § 11–15–6 (1987) (Repl.Vol.2002) (emphasis added).[9] We believe the foregoing provisions clearly reflect the legislative intent that presumptions are to be made in favor of taxability, and exemptions must be clearly established. *See, e.g., Wooddell v. Dailey*, 160 W.Va. 65, 66–67, 230 S.E.2d 466, 468 (1976) ("W. Va.Code, 11–15–6, provides that

---

**8.** Although Davis Memorial and the Tax Commissioner both argue that the language of W. Va. Code 11–15–9(a)(6)(f)(i)(II) is plain, they each assign a different meaning to the statute. This disagreement is not dispositive of the question of whether the statute is plain or ambiguous; we have repeatedly explained that "[t]he fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning." *T. Weston, Inc. v. Mineral County*, 219 W.Va. 564, 568, 638 S.E.2d 167, 171 (2006)

(citing *Deller v. Naymick*, 176 W.Va. 108, 112, 342 S.E.2d 73, 77 (1985); and *Estate of Resseger v. Battle*, 152 W.Va. 216, 220, 161 S.E.2d 257, 260 (1968)).

**9.** Similar language is currently found at W. Va. Code § 11–15–6(b) (2003) (Repl.Vol.2005), which states: "[t]o prevent evasion, it is presumed that all sales and services are subject to the tax until the contrary is clearly established."

all sales and services are presumed to be subject to the tax until the contrary is clearly established. In the face of such a presumption, the taxpayer has the burden of establishing that she is not subject to the tax."). Therefore, examining the specific language of W. Va.Code § 11–15–9(a)(6)(F)(i)(II) in light of the statutory scheme of which it is a part, we believe the Legislature intended the term "support" to have a broad meaning so that the organizations who could qualify as exempt by virtue of the § 11–15–9(a)(6)(C) support test would be limited.

■ Our conclusion is supported by the rule that " '[w]here a person claims an exemption from a law imposing a license or tax, such law is strictly construed against the person claiming the exemption' Syllabus Point 4, *Shawnee Bank, Inc. v. Paige*, 200 W.Va. 20, 488 S.E.2d 20 (1997) (citations omitted)." Syl. pt. 1, *RGIS Inventory Specialists v. Palmer*, 209 W.Va. 152, 544 S.E.2d 79 (2001). *Accord* Syl. pt. 5, *CB&T Operations Co., Inc. v. Tax Comm'r of State*, 211 W.Va. 198, 564 S.E.2d 408 (2002); Syl. pt. 2, *Tony P. Sellitti Constr. Co. v. Caryl*, 185 W.Va. 584, 408 S.E.2d 336 (1991); Syl. pt. 5, *Pennsylvania & West Virginia Supply Corp. v. Rose*, 179 W.Va. 317, 368 S.E.2d 101 (1988); Syl. pt. 2, *State ex rel. Lambert v. Carman, State Tax Comm'r*, 145 W.Va. 635, 116 S.E.2d 265 (1960).

■ The legislative intent to assign a broad meaning to the term "support," and to thereby limit those charitable organizations who are able to claim the related exemption, is further demonstrated by the express language of W. Va.Code § 11–15–9(a)(6)(F)(i) stating: "[t]he term 'support' includes, *but is not limited to.*" In this regard, this Court has recognized that "[t]he term 'includ[es]' in a statute is to be dealt with as a word of enlargement and this is especially so where . . . such word is followed by 'but not limited

to' the illustrations given." *State Human Rights Comm'n v. Pauley*, 158 W.Va. 495, 501, 212 S.E.2d 77, 80 (1975) (citations omitted). Davis Memorial argues that, under the doctrines of *ejusdem generis*[10] and *noscitur a sociis*,[11] the phrase "includes, but is not limited to" as used in W. Va.Code § 11–15–9(a)(6)(F)(i) must be read in connection with the list that follows and therefore W. Va. Code § 11–15–9(a)(6)(F)(i)(II) must be read to mean "includes but is not limited to" additional types of fundraisers not expressly listed. We reject this analysis. The phrase "includes, but is not limited to" appears in subsection W. Va.Code § 11–15–9(a)(6)(F)(i) and applies broadly to all those types of support listed thereunder in subsections (I) through (VI), which include items, such as "[n]et income from unrelated business activities"[12] and "[g]ross investment income,"[13] that plainly do not refer to fundraisers.

To determine the intent of the Legislature with respect to what income should be included as "support" for purposes of calculating whether more than half of that amount derives from "any combination of gifts, grants, direct or indirect charitable contributions or membership fees," W. Va.Code § 11–15–9(a)(6)(C), we think it is also useful to look at earlier versions of the exemption section to see how such exemptions have been historically addressed. *See, e.g., Carter–Hubbard Pub. Co., Inc. v. WRMC Hosp. Operating Corp.*, 178 N.C.App. 621, 625, 633 S.E.2d 682, 685 (2006) (" 'Other indicia considered by this Court in determining legislative intent are the legislative history of an act and the circumstances surrounding its adoption[.]' " (citations omitted)); *Smith v. Com.*, 32 Va.App. 228, 235, 527 S.E.2d 456, 460 (2000) ("A statute should, if possible, be construed to " 'effect rather than defeat a legislative purpose evident from the history of the legislation." ' " (citations omitted)).

---

**10.** *Ejusdem generis* is a "cannon of construction that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." Black's Law Dictionary 535 (7th ed.1999).

**11.** *Noscitur a sociis,* is a "cannon of construction holding that the meaning of an unclear word or

phrase should be determined by the words immediately surrounding it." Black's Law Dictionary 1084 (7th ed.1999).

**12.** *See* W. Va.Code § 11–15–9(a)(6)(F)(i)(III).

**13.** *See* W. Va.Code § 11–15–9(a)(6)(F)(i)(IV).

The consumer sales tax statute was first codified at Chapter 11, Article 15, in 1937. *See* Acts of the Legislature, Reg. Sess., ch. 108 (1937). That early version of the statute did not contain any exemption for charitable organizations; although, it did contain a section outlining certain sales that were not included. *See* Acts of the Legislature, Reg. Sess., ch. 108, § 9, at 444 (1937).[14] Thus, charitable organizations received no exemptions by virtue of their status as charitable organizations, but rather were entitled to an exception from consumer sales tax only to the extent that they engaged in certain types of sales transactions. Thereafter, W. Va. Code § 11–15–9 was amended several times;[15] and in 1955 an exclusion for charitable organizations was added. Acts of the Legislature, Reg. Sess., ch. 1169, § 9, at 506 (1955). However, the charitable organization exclusion, which appeared at subsection 6, applied only to those organizations that made "no charge whatever for the services they render." *Id.*[16] Accordingly, charitable organizations began to receive an exclusion by virtue of their status as charitable organizations, but this exclusion applied only to those charitable organizations that did not charge for the services they rendered. This language remained in subsection 6 through amendments to § 11–15–9 that occurred in 1957,[17] 1963,[18] and 1969.[19] In 1974, § 11–15–9 was once again substantively changed. In 1974, an exemption for § 501(c)(3) organizations was granted, but such organizations were exempt only if they made "casual and occasional sales not conducted in a repeated manner." W. Va.Code § 11–15–9(6).[20] The "casual and occasional sales not conducted in a repeated manner" qualification remained in

---

14. Some of the types of sales enumerated in that first statute remain in the modern exclusion section. In 1937, Section 9 stated:

> Sec.9. *Sales Not Included.* The provisions of this article shall not apply to:
> 1. Sales of gasoline, taxable under article fourteen, chapter eleven of the official code, one thousand nine hundred thirty-one;
> 2. Sales of gas, stam and water delivered to consumers through mains or pipes, and sales of electricity;
> 3. Sales of school books required to be used in any of the schools of this state.
> 4. Sales to the state, its institutions or subdivisions, and sales to the United States, including sales to agencies of federal, state or local governments for distribution in public welfare or relief work;
> 5. Sales on motor vehicles which are titled by the state road commission.

Acts of the Legislature, Reg. Sess., ch. 108, § 9, at 444 (1937).

15. *See* Acts of the Legislature, Reg. Sess., ch. 119 (1941); Acts of the Legislature, Reg. Sess., ch. 90 (1943); Acts of the Legislature, Reg. Sess., ch. 182 (1951).

16. In this regard, W. Va.Code § 11–15–9 stated:

> Sec. 9 *Exemptions.*—The following sales and services shall be exempt:
> ....
> (6) Sales of property or services *to churches and bona fide charitable organizations who make no charge whatever for the services they render* or to persons engaged in this state in the business of contracting, manufacturing, transportation, transmission, communication, or in the production of natural resources: *Provided, however,* That the exemption herein granted shall apply only to services, machinery, sup-

plies and materials directly used or consumed in the businesses or organizations named above ....

Acts of the Legislature, Reg. Sess., ch. 1169, § 9, at 506 (1955).

17. *See* Acts of the Legislature, Reg. Sess., ch. 164, at page 744 (1957).

18. *See* Acts of the Legislature, Reg. Sess., ch. 186, at pages 849–50 (1963).

19. *See* Acts of the Legislature, Reg. Sess., ch. 143, at pg. 1250 (1969).

20. W. Va.Code § 11–15–9(6) (1974) states in full:

> The following sales and services shall be exempt:
> ....
> Sales of property or services to churches and bonafide charitable organizations who make no charge whatever for the services they render or sales of property or services to corporations or organizations qualified under section 501(c)(3) of the Internal Revenue Code of 1954, as amended, or under section 501(c)(4) of the Internal Revenue Code of 1954, as amended, who make casual and occasional sales not conducted in a repeated manner or in the ordinary course of repetitive and successive transactions of like character, or sales of property or services to persons engaged in this State in the business of contracting, manufacturing, transportation, transmission, communication, or in the production of natural resources: Provided, however, that the exemption herein granted shall apply only to services, machinery, supplies and materials directly used or consumed in the businesses or organizations named above[.]

W. Va.Code § 11–15–9(6) until 1989, when the Legislature again re-wrote section 9, and first used the language we are asked to interpret in the case sub judice.

Given this history of gradual change and narrowly defined groups of charitable organizations to which a sales tax exclusion would apply, we find it difficult to believe that the Legislature intended such a dramatic change in the law, as advocated by Davis Memorial, from allowing the exemption only to § 501(c)(3) organizations who made only "casual and occasional sales not conducted in a repeated manner," to allowing the exemption to be claimed by a § 501(c)(3) organization that earned more than $64,000,000.00 in fees charged to patients receiving health care services.

Furthermore, the Tax Department has persuasively explained that the tax exemption at issue specifically states that the calculation for the term "support" must include gross receipts from any activity which is *not an unrelated trade or business income:*

(II) Gross receipts from fundraisers which include receipts from admissions, sales of merchandise, performance of services or furnishing of facilities in any activity *which is not an unrelated trade or business* within the meaning of Section 513 of the Internal Revenue Code of 1986, as amended;

(Emphasis added). Clearly then, the Tax Department submits, the Legislature intended that gross receipts from business activities which are not unrelated business activities must be included in the calculation of

support. Davis Memorial's receipts from activities which are "not an unrelated trade or business" necessarily refers to Davis Memorial's provision of health care services. Thus, those funds must be included in the calculation of its "support." Notably, under Davis Memorial's interpretation of the statute as limiting "support" to include only fundraising activities, the phrase "in any activity which is not an unrelated trade or business . . . ." is essentially rendered meaningless. Such a result is contrary to our rules of statutory interpretation. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999). *See also State ex rel. Johnson v. Robinson,* 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979) ("It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning.").

We note that Davis Memorial engages in an in depth grammatical analysis of W. Va.Code § 11–15–9(a)(6)(F)(i)(II), arguing that it contains a restrictive clause, as indicated, inter alia, by the use of the term "which" without a comma;[21] that use of the plural verb "include" in W. Va.Code § 11–15–9(a)(6)(F)(i)(II) indicates that it modifies the term "fundraisers";[22] and that the list contained in W. Va.Code § 11–15–9(a)(6)(F)(i)(II) is joined with the conjunctive "or," which indicates a restrictive clause. We reject these arguments. While a grammatical analysis may be a useful tool in inter-

---

**21.** Davis Memorial contends that in these circumstances the term "which" is interchangeable with the term "that." Thus, the language following "which" modifies the phrase "[g]ross receipts from fundraisers," thereby restricting that clause to mean only the specific types of fundraisers defined in the remainder of the paragraph. While we reject a grammatical analysis of this statute, we note that Davis Memorial's analysis in this regard is flawed. A restrictive clause modifies the noun that precedes the restrictive pronoun, *i.e.* "that." *See* Mary Barnhard Ray and Jill J. Ramsfield, *Legal Writing: Getting It Right and Getting It Written* 214–15 (1987). Therefore, to read "that" into W. Va. Code § 11–15–9(a)(6)(F)(i)(II) as urged by Davis Memorial, the noun being modified would simply

be "fundraisers." Under this analysis, "fundraisers" would be limited to only those fundraisers that "include receipts *from admissions.*" (Emphasis added). Receipts from other types of fundraisers would not be included. Certainly such an absurd result was not intended by the Legislature. *See* Syl. pt. 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938) ("Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce an absurdity, will be made.").

**22.** We note that the plural verb "include" would also properly modify "gross receipts."

preting a statute, it is not controlling, and it will not justify an interpretation that is contrary to the intent of the Legislature. "In ascertaining the intent of the Legislature in the enactment of a statute and determining whether it is unambiguous, the grammatical construction, *while not controlling,* is an important aid." Syl. pt. 4, *Pond Creek Pocahontas Co. v. Alexander,* 137 W.Va. 864, 74 S.E.2d 590 (1953) (emphasis added).

Finally, we note that Davis Memorial argues that, because W. Va.Code § 11–15–9(a)(6)(F)(i)(II) is modeled after its federal counterpart [23] but fails to use identical language, it is presumed that the Legislature desired a standard different than that established in the federal statute.[24] One court has described the rule thusly:

> We note initially that the federal courts' interpretations of a federal statute are not binding upon the Illinois courts or legislature although when the state legislature passes a state statute based upon a federal statute, the statute can presumably be interpreted in conformity with the decisions of the federal courts rendered prior to the adoption of the statute. Further, it may be presumed that the legislature adopted the language it did with knowledge of the construction previously enunciated in the federal courts. (*See, Commonwealth Life & Accident Insurance Co. v. Bd. of Rev. of Dept. of Labor* (1953), 414 Ill. 475, 481–82, 111 N.E.2d 345, 348; *see also,* 34 I.L.P. Statutes, § 135, p. 129 (1958).) However, the converse of these principles of statutory construction is also true. Since it may be presumed that the legislature had knowledge of the federal court's construction of the federal statute, the intent of the state legislature can be derived not only from the language actually adopted, but also from the language which was changed or not adopted. The fact that the state legislature specifically declined to adopt a certain section of the model federal statute, evidences an intent to achieve a result different from that announced by the decisions of the federal courts.

*Laborer's Int'l Union of North America, Local 1280 v. State Labor Relations Bd.,* 154 Ill.App.3d 1045, 1050, 507 N.E.2d 1200, 1204, 107 Ill.Dec. 831, 835 (1987).

 This Court has not expressly embraced the foregoing doctrine in the context of the Legislature's adoption of a modified version of another jurisdiction's statute.[25] Notably, though, the adoption of a modified version of another jurisdiction's statute

**23.** 26 U.S.C. § 509(d)(2) defines "support" as follows:

> (d) Definition of support.—For purposes of this part and chapter 42, the term "support" includes (but is not limited to)—
> (1) gifts, grants, contributions, or membership fees,
> (2) *gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities in any activity which is not an unrelated trade or business (within the meaning of section 513),*
> (3) net income from unrelated business activities, whether or not such activities are carried on regularly as a trade or business,
> (4) gross investment income (as defined in subsection (e)),
> (5) tax revenues levied for the benefit of an organization and either paid to or expended on behalf of such organization, and
> (6) the value of services or facilities (exclusive of services or facilities generally furnished to the public without charge) furnished by a governmental unit referred to in section 170(c)(1) to an organization without charge.
> Such term does not include any gain from the sale or other disposition of property which would be considered as gain from the sale or exchange of a capital asset, or the value of exemption from any Federal, State, or local tax or any similar benefit.

(Emphasis added).

**24.** Davis Memorial acknowledges that it does not meet the federal support test.

**25.** We have, however, adopted a similar rule related to an amendment to our own statutory law:

> We have traditionally held that where a statute is amended to use different language, it is presumed that the legislature intended to change the law. We spoke to this concept in Syllabus Point 2 of *Butler v. Rutledge,* 174 W.Va. 752, 329 S.E.2d 118 (1985):
> " 'The Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended.' Syl. pt. 2, *Hall v. Baylous,* 109 W.Va. 1, 153 S.E. 293 (1930)."

*Arnold v. Turek,* 185 W.Va. 400, 404, 407 S.E.2d 706, 710 (1991).

merely creates a *presumption* that a change was intended. Moreover, it appears that minor changes to a statutory scheme do not carry the same weight as more significant changes:

> " 'where *material and substantive changes* are made by the Legislature in adopting a federal statute the presumption that the Legislature intended to accomplish the same purposes and objectives,as the Congress is no longer valid.' Substantive changes can easily, and probably do, indicate different purposes and objectives than those intended by the Congress when it initially enacted the law.' "

*State v. Wells,* 276 N.W.2d 679, 691 (N.D., 1979) (quoting *State v. Wells,* 265 N.W.2d 239, 247 (N.D.1978)). When comparing the language used in W. Va.Code § 11–15–9(a)(6)(F)(i)(II) with its federal counterpart, we simply do not find the change in language to be "material and substantive." Rather, given our determination that the Legislature intended the term "support" to have a broad meaning so that the organizations who could qualify as exempt by virtue of the § 11–15–9(a)(6)(C) support test would be limited, we conclude that the change merely reflected the Legislature's desire to clarify the federal statute and more specifically define what was meant by the term "admissions."

 Based upon the foregoing analysis, we now hold that the term "support," as defined in W. Va.Code § 11–15–9(a)(6)(F)(i)(II) (2007) (Supp.2008), includes, but is not limited to, gross receipts from: (1) fundraisers, which include receipts from admissions; (2) sales of merchandise; (3) performance of services; or (4) furnishing of facilities, in any activity which is not an unrelated trade or business within the meaning of Section 513 [26 USCS § 513] of the Internal Revenue Code of 1986, as amended. Applying this definition of support, the $64,180,500.00 in exempt purpose income earned by Davis Memorial for the year 2002 is included. Therefore, Davis Memorial received less than one half of its support from gifts, grants, direct or indirect charitable contributions or membership fees during the year 2002, and its claim for a refund was properly denied.

## IV.

## CONCLUSION

The Circuit Court of Randolph County did not err in affirming the Tax Commissioner's denial of Davis Memorial's claim for a refund of sales and use tax for the year 2002. Consequently, the circuit court's order of June 27, 2007, is affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

Senior Status Justice McHUGH disqualified.

Judge HUTCHISON sitting by temporary assignment.