717 S.E.2d 255

**LAMAR OUTDOOR ADVERTISING, Petitioner Below, Petitioner**

v.

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, Respondent Below, Respondent.**

**No. 101285.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 2011.

Decided Sept. 29, 2011.

Richard E. Holtzapfel, Holtzapfel Law Offices, Hurricane, WV, for Petitioner.

Jeffrey J. Miller, West Virginia Division of Highways, Legal Division, Charleston, WV, for Respondent.

PER CURIAM:

Lamar Outdoor Advertising, petitioner (hereinafter referred to as "Lamar"), appeals from an order of the Circuit Court of Cabell County that affirmed an order of the Commissioner of the West Virginia Department of Transportation, Division of Highways (hereinafter referred to as "Commissioner" or "DOH"). The circuit court's order affirmed a decision by the Commissioner to deny Lamar's protest of a DOH order requiring Lamar to remove an outdoor advertising sign. In this appeal, Lamar contends that the circuit court erred in not finding that DOH was required to give it thirty days notice to comply with the law regarding the sign, and that it was denied due process of law. After listening to the arguments of the parties, and a thorough review of the briefs and record, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts of this case has its origins in permits issued by DOH in 1988 to McWhorter Advertising Corp. for an outdoor advertising sign. The permits authorized McWhorter to erect an advertising sign in Cabell County. McWhorter thereafter erected an advertising sign pursuant to the permits. However, in December 1996, McWhorter wrote a letter to DOH indicating that it

wanted to cancel the permits for the advertising sign because it was "no longer able to build due to the Roush Gas Co. going out of business." It appears that the letter McWhorter sent to DOH inadvertently listed the wrong permit numbers. As a consequence of the letter indicating that no sign would be erected under the permits, DOH did not follow up by sending McWhorter a letter demanding that the sign be removed. Subsequent to McWhorter's letter cancelling the permits, Lamar purchased the assets of McWhorter in 1997, including the advertising sign for the inadvertently cancelled permits. Although Lamar became the owner of the sign whose permits were inadvertently cancelled, Lamar never paid the annual permit fee to DOH for the sign.

In 2008, DOH conducted a compliance inventory of outdoor advertising signs. During that inventory, DOH discovered a sign that did not have a permit tag and for which no record of a permit existed. The sign in question was the sign for which McWhorter inadvertently cancelled the permits and which was now the property of Lamar. DOH requested Lamar provide it with proof that the sign was in compliance with the law. Lamar could not do so; therefore, DOH ordered Lamar to dismantle the sign.

Lamar filed an administrative protest to DOH's order that it dismantle the sign. A hearing on the protest was held before a Hearing Examiner on November 13, 2008. The Hearing Examiner issued a recommended decision denying Lamar's protest on April 8, 2009. The Commissioner issued an order on April 21, 2009, adopting the Hearing Examiner's recommended decision. Lamar subsequently appealed the Commissioner's order to the circuit court. The circuit court entered an order on May 14, 2010, affirming the Commissioner's order. This appeal followed.

## II.

### STANDARD OF REVIEW

In this proceeding, we are called upon to review a trial court's order affirming an administrative ruling by the Commissioner. We have held that,

[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). It has also been held that

[a] reviewing court must evaluate the record of an administrative agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts.

Syl. pt. 1, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). With these principles guiding our analysis, we will address the issues presented by this case.

## III.

### DISCUSSION

On appeal to this Court, Lamar raises two assignments of error: (1) it was entitled to thirty days notice to bring the subject sign into compliance with the governing law and (2) it was denied due process of law. We separately will consider these issues.

### A. *Thirty Days Notice Requirement*

Lamar contends that when DOH learned that no permit existed for the sign, DOH was required by W. Va.Code § 17–22–15(e) (2004) (Repl.Vol.2009), to give it thirty days notice to correct the problem by obtaining a permit. DOH argues that the statute did not require it to provide Lamar with thirty days notice before ordering the sign be removed. We agree.

The issue of whether Lamar was entitled to thirty days notice to correct the problem with the sign requires this Court to review the language of W. Va.Code § 17–22–

15(e). In matters of statutory construction, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). Further, "[i]t is not for this Court arbitrarily to read into [a statute], that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W.Va. 535, 547, 474 S.E.2d 465, 477 (1996) (citations omitted).

The pertinent language of the statute in question provides as follows:

> The commissioner may, after thirty days' notice in writing to the permittee, make and *enter an order revoking any permit* issued by him or her under this section ... in any case where it shall appear to the commissioner that the application for the permit contains knowingly false or misleading information or that the permittee has violated any of the provisions of this article, unless the permittee shall, before the expiration of the thirty days, correct the false or misleading information and comply with the provisions of this article.

W. Va.Code § 17–22–15(e) (emphasis added). *See also* W. Va. C.S.R. § 157–6–7.5.

Under the facts of this case, we find no ambiguity in the statute. Pursuant to the statute, if the Commissioner finds that an application for a permit contains knowingly false or misleading information or that the permittee has violated any of the provisions of the statute, the Commissioner must provide a permittee thirty days notice within

which to correct the problem before revoking a permit. Lamar contends that the Commissioner failed to provide it with thirty days notice as required by the statute. The Commissioner points out that the statute only requires thirty days notice before it can "revoke" a permit. The Commissioner argues further that it did not revoke the permit in question. The permit was voluntarily cancelled.

■ The plain and unambiguous language of W. Va.Code § 17–22–15(e) clearly makes it applicable only to permit revocations. Nothing in the statute addresses the issue of providing notice when a permit for a sign has been voluntarily cancelled. In other words, Lamar is asking this Court to insert into W. Va.Code § 17–22–15(e) a requirement that the Commissioner give notice before it orders the removal of a sign for which the permit was voluntarily cancelled.[1] This Court has long recognized that "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. pt. 1, *Consumer Advocate Div. v. Pub. Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989). Thus, "[i]n the absence of supporting language, this Court is not at liberty to re-write the [statute] to achieve the result advocated by [Lamar]." *Davies v. West Virginia Office of Ins. Comm'r*, 227 W.Va. 330, 336, 708 S.E.2d 524, 530 (2011). That is, we refuse to add to the statute a requirement that the legislature has omitted.[2]

The issue raised by Lamar was addressed in a different context in *Satterfield v. McWhorter Advertising II, Inc.*, 183 W.Va. 634, 398 S.E.2d 116 (1990). In that case, the plaintiffs filed for an injunction to prohibit the defendant from erecting an outdoor ad-

---

1. Lamar's brief does not quote the statute, nor does it address the language in the statute authorizing revocation of a permit. Lamar's brief simply points out that the statute has a thirty days notice requirement.

2. Lamar also contends that the Hearing Examiner erred by failing to address the issue of the application of W. Va.Code § 17–22–15(e). Lamar submitted to the Hearing Examiner its Proposed Findings of Fact and Conclusions of Law, which raised the issue of the application of W. Va.Code § 17–22–15(e). The Hearing Examiner's recom-

mendation did not expressly address the issue. However, the Hearing Examiner's recommendation expressly stated: "Any proposed finding of fact, conclusion of law, or argument proposed or submitted by a party but omitted herein is deemed irrelevant or unnecessary to the determination of the material issues in this matter." Based upon this provision in the Hearing Examiner's recommendation, we are satisfied that the Hearing Examiner considered the issue of the application of W. Va.Code § 17–22–15(e) and rejected the same.

vertising sign near their church. The defendant had obtained a revised permit from the Commissioner of the Department of Highways that allowed the defendant to erect the sign near the church.[3] The trial court found that the revised permit was valid and denied relief to the plaintiffs. On appeal, one of the issues addressed in *Satterfield* was whether the Commissioner had authority to revise the permit. The defendant contended that such authority existed under the language of W. Va.Code § 17–22–15(e), which allows the Commissioner to give a permittee thirty days notice to correct an application for a permit that contains knowingly false or misleading information. This Court rejected the defendant's reliance on the statute:

> We do not believe that the administrative remedy provided by W. Va.Code § 17–22–15(e) is applicable in this case. There is no evidence that [the defendant] supplied either false or misleading information upon initially applying to the DOH for an outdoor advertising permit.

*Satterfield,* 183 W.Va. at 637, 398 S.E.2d at 119.

The decision in *Satterfield* is instructive in illustrating this Court's determination that, in order for a party to come within the administrative remedy of W. Va. Code § 17–22–15(e), a party must satisfy its express requirements because this Court will not add to those requirements.[4]

### B. Denial of Due Process

Lamar additionally contends that it was denied due process when DOH ordered the

3. The facts of *Satterfield* indicate that the Commissioner was misled by the defendant when he revised the permit.

4. Lamar also has argued that it attempted to resolve the permit issue by coming into compliance with the law, but that DOH refused its offer of compliance. The evidence introduced before the Hearing Examiner showed that DOH could not accept Lamar's offer because, under the existing law, the sign could no longer be placed on that site. The Hearing Examiner's order specifically found:

> It is uncontested among the parties that under current law and under the conditions now existing on the site of the subject sign structure, no permit for a new outdoor advertising sign could be issued by WVDOH.

sign to be removed. Lamar believes that DOH should have issued a "take down" letter when the permits were cancelled.[5]

The right to due process of law is succinctly stated in Article III, § 10 of the West Virginia State Constitution: "No person shall be deprived of life, liberty, or property, without due process of law, and judgment of his peers." This Court has recognized that "[d]ue process of law, within the meaning of the State and Federal constitutional provisions, extends to actions of administrative officers and tribunals, as well as to the judicial branches of the governments." Syl. pt. 2, *State ex rel. Ellis v. Kelly,* 145 W.Va. 70, 112 S.E.2d 641 (1960). This Court has also held that the following guidelines should be used to determine what due process requires outside of the criminal arena:

> Applicable standards for procedural due process, outside the criminal area, may depend upon the particular circumstances of a given case. However, there are certain fundamental principles in regard to procedural due process embodied in Article III, Section 10 of the West Virginia Constitution, which are: First, the more valuable the right sought to be deprived, the more safeguards will be interposed. Second, due process must generally be given before the deprivation occurs unless a compelling public policy dictates otherwise. Third, a temporary deprivation of rights may not require as large a measure of procedural due process protection as a permanent deprivation.

In Syllabus point 2 of *Satterfield* we made clear that "[a]n outdoor advertising permit granted by the Department of Highways ... cannot be revised in a manner which would cause the permit to violate any other statute regulating outdoor advertising." 183 W.Va. 634, 398 S.E.2d 116. Under *Satterfield,* DOH could not accept an offer of compliance from Lamar that would violate the law.

5. Lamar also appears to be arguing that it was denied due process because DOH failed to follow the notice procedure under W. Va.Code § 17–22–15(e). Insofar as we have determined that this statute is not applicable under the facts of this case, Lamar did not have any due process rights under the statute.

Syl. Pt. 2, *North v. West Virginia Bd. of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977). Finally,

> [w]hen due process applies, it must be determined what process is due and consideration of what procedures due process may require under a given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been impaired by government action.

Syl. pt. 2, *Bone v. W.Va. Dep't of Corrs.,* 163 W.Va. 253, 255 S.E.2d 919 (1979).

In the instant case, Lamar contends that when the permits for the sign were cancelled by McWhorter in 1996, DOH should have issued a "take down" letter ordering McWhorter to remove the sign. Lamar argues further that if DOH had issued such a letter, McWhorter would have been put on notice that it cancelled the wrong permits and could have taken corrective actions. Consequently, Lamar contends that it was deprived of due process because of the failure of DOH to issue the take down letter to McWhorter.

DOH points out that the letter submitted by McWhorter cancelling the permits indicated clearly that it had not erected a sign under the permits. The letter stated that McWhorter wanted to cancel the permits for the advertising sign because it was "no longer able to build due to the Roush Gas Co.

6. DOH notes, however, that a take down letter is not always required.

7. DOH further notes that if Lamar had paid the annual permit fee for the sign as required by law,

going out of business." Insofar as DOH was informed by McWhorter that no sign had been erected, DOH contends that issuance of a take down letter was not necessary.

■ Assuming, for the sake of argument, that due process requires DOH to issue a take down letter when a permittee cancels a permit,[6] we do not believe that due process requires DOH to issue a take down letter when a permittee cancels a permit and indicates that no sign has been erected under the permit. To require DOH to issue a letter ordering a permittee to take down a sign that does not exist is illogical.[7]

## IV.

## CONCLUSION

We find that Lamar has failed to show that the circuit court erred in affirming the Commissioner's decision denying Lamar's protest of a DOH order requiring Lamar to remove an outdoor advertising sign. The circuit court's order is, therefore, affirmed.

Affirmed.

Lamar would have learned of McWhorter's cancellation error. Presumably, this is so because DOH would then have notified Lamar that no permit existed for the payment tendered.