FILED
**June 14, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Shale Energy Alliance, Inc.,
a Delaware Corporation,
Defendant Below, Petitioner**

**vs.) No. 20-0270 (Wood County 18-C-162)**

**Mac Warner, West Virginia Secretary of State,
Plaintiff Below, Respondent.**

## MEMORANDUM DECISION

Petitioner Shale Energy Alliance, Inc. (sometimes referred to as "SEA"), by counsel Jason B. Torchinsky, Kathleen M. Guith,[1] Danielle M. Waltz, M. Shane Harvey, and Chelsea A. Creta, appeals the order of the Circuit Court of Wood County, entered on April 2, 2020, granting respondent West Virginia Secretary of State Mac Warner's motion for summary judgment, determining that petitioner is a political action committee ("PAC") under West Virginia Code § 3-8-1a(21)(2013),[2] and denying petitioner's cross-motion for summary judgment. Respondent, by

---

[1] Both Mr. Torchinsky and Ms. Guith were admitted pro hac vice.

[2] Because the date of the election statute is critical to our analysis, the year of the statute is used. The 2013 version of this election statute governs this case and is the *only* version at issue herein. The 2013 version of West Virginia Code § 3-8-1a(21), which is located in the 2018 bound volume of the code, provides:

> "Political action committee" means a committee organized by one or more persons for the purpose of supporting or opposing the nomination or election of one or more candidates. The following are types of political action committees:
>
> (A) A corporate political action committee, as that term is defined by subdivision (8) of this section;
>
> (B) A membership organization, as that term is defined by subdivision (18) of this section;
>
> (C) An unaffiliated political action committee, as that term is defined by subdivision (29) of this section.

1

counsel Patrick Morrisey, Lindsay S. See, Curtis R.A. Capehart, and Thomas T. Lampman, filed a response to which petitioner replied.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case concerns whether petitioner was required to register as a PAC and make certain public disclosures regarding its political advertising and its concomitant expenditures. In this regard, the undisputed facts are that petitioner was first incorporated in the State of Delaware in 2015 under Internal Revenue Code § 501(c)(4) as a nonprofit social welfare organization, and was registered to do business in this State later that year.[3] Petitioner's by-laws provide that its purpose was "to raise and expend funds in support or opposition to public policy relating to oil and natural gas development and general business issues." Further, in tax documents relating to its nonprofit status, it describes its "mission or *most significant* activities" as follows:

> To raise and expend funds on public education campaigns regarding public policy issues critical to oil and natural gas development in multiple states, including Pennsylvania and West Virginia and future states to be determined[.] To raise and expend funds on public education campaigns regarding public policy issues critical to general business development such as taxation and labor issues in multiple states including Pennsylvania and West Virginia and future states to be determined[.] *Advocate for candidates seeking public office whose views align with the organization's priorities*[.]

(Emphasis added).

---

The Legislature amended and reenacted West Virginia Code § 3-8-1a in 2019, rewriting and substantially altering the statute, including the definition of a PAC. *See* W. Va. Code § 3-8-1a(28) (2019) (providing "'[p]olitical action committee' means a committee organized by one or more persons, *the primary purpose* of which is to support or oppose the nomination or election of one or more candidates.") (emphasis added). *See infra* discussion. Although not relevant to the case before us, and not yet effective, the statute was also amended in 2021; however, the 2021 change to the subsection defining a PAC is only to renumber it. *See* H.B. 2927, 2021 Reg. Sess.; W. Va. Code § 3-8-1a(29) (2021).

[3] According to respondent, petitioner's "authorization to conduct business in West Virginia lapsed in late 2016," when the entity was administratively dissolved in this State for its failure to comply with reporting requirements. It is unclear what impact the lapse of this authorization played in respondent's decision to pursue the case against petitioner, but respondent did set forth the lapse as an allegation in the complaint. *See infra* text.

Petitioner admits that it engages in activities including "social events, fundraisers, and receptions" to advance its purposes, and that from its formation in 2015 through 2018, it spent "over $952,922" on "advertising that touted the benefits of shale energy[,] educating the industry about salient political developments[,]" and "'legislative receptions' designed to get 'representatives from natural gas suppliers, delegates, and legislators in the same room so they can talk to each other.'" Petitioner acknowledges that it has made political contributions and expenditures, including

> approximately $11,000 for independent expenditures (i.e., express advocacy) in 2015. And in 2016, it contributed $25,000 to two different West Virginia political action committees ($50,000 total). Also in 2016, SEA disclosed spending approximately $34,000 on "electioneering communications." Similarly, in 2018, SEA ran communications featuring state candidates in West Virginia, including: mailers; a single newspaper advertisement; and a single television advertisement. SEA spent $156,000 on these communications and reported them as independent expenditures. SEA also spent $10,500 on four public opinion polls in 2018.

(Footnote and citations to joint appendix omitted).

In specific regard to petitioner's activities relating to the 2018 election cycle, its leadership decided that there had not been much progress with its agenda in the prior two years, so it made a decision to "ramp[] up" the organization's efforts. According to the appendix record, petitioner commissioned a $20,000 video advertisement expressly advocating against the election of a specific candidate and aired it in 468 distinct "spots" in the two weeks preceding the primary. Petitioner also made eighteen distinct expenditures for mailing campaigns, some expressly advocating against a candidate and others expressly advocating for a different candidate. While some of petitioner's mailings to voters focused on issues involving natural gas, oil, and taxes, others endorsed a candidate's position on issues such as the "Second Amendment" and "fight[ing] the opioid crisis." Further, petitioner purchased an ad in a local newspaper expressly advocating "[v]ote to keep [a candidate] in office," again commending the candidate's "Second Amendment" record. Petitioner's disclosures indicate that the cost of its 2018 primary election advocacy campaign totaled $77,178.22.

By letter dated May 29, 2018, Donald M. Kersey, III, Elections Director and Deputy Legal Counsel with the West Virginia Secretary of State's Office, notified petitioner that the Secretary of State had received a formal complaint alleging, among other things, that petitioner had violated West Virginia Code §§ 3-8-2 and 3-8-4(a) "by expressly advocating the defeat of one or more clearly identified candidates without filing the proper organizational paperwork as a political action committee (PAC) with the Secretary of State (or Federal Election Commission) no later than twenty-eight days prior to the Primary Election on May 8, 2018[.]" Thereafter, respondent assisted petitioner with coming into partial compliance, with petitioner filing disclosure forms for its 2018 primary election independent expenditures. However, petitioner did not agree that it was required to register as a PAC, to file the detailed transaction reports required from PACs, or to

3

pay the penalties due to its delinquent filings.[4]  On June 4, 2018, respondent filed a complaint in the Circuit Court of Wood County against petitioner, alleging multiple violations of West Virginia's election statutes, including petitioner's failure to register and report as a PAC.

Respondent maintains that even after the complaint was filed, as the 2018 general election got closer, petitioner spent $79,000 on direct mail advocating on behalf of seven distinct candidates, and $10,500 to commission four public opinion polls, which petitioner admitted were done to make its "political advertisements more effective." Once again, petitioner did not disclose these expenditures to respondent until it received a cease and desist letter. The disclosures revealed that petitioner's general election mailing campaign expenditures totaled $78,983.03. Thus, the grand total for petitioner's advertising, mailing, and polling related to the 2018 election cycle was $166,661.25.[5]  Petitioner's total expenditures for 2018 were $332,108, so the expenditures directed toward the 2018 election cycle accounted for more than half of petitioner's total spending for the entire year.

The parties ultimately reached a partial settlement in August of 2019, wherein they resolved most of the allegations contained in the complaint.  Petitioner was required to file disclosures for the election communications expenses from 2018, and further agreed to make partial disclosures of its financial transactions in order to toll the accrual of timeliness penalties. Petitioner also agreed to "pay all penalties for delinquent filing of independent expenditure reports and electioneering communications disclosures calculated to have accrued as of the Effective Date [August 19, 2019], specifically twelve thousand, nine hundred sixty-three dollars ($12,963) (the "Settlement Amount")." However, the parties were unable to settle the question before us:  whether petitioner met the statutory definition of a PAC, requiring it to register with respondent as such.

Thereafter, the parties filed cross-motions for summary judgment concerning the PAC issue. *See* W. Va. Code § 3-8-1a(21).  Petitioner primarily argued that it did not meet the statutory definition of a PAC because it was not organized for the sole purpose of expressly advocating for or against candidates.  *See id*.  Significantly, petitioner did not raise any arguments relating to the constitutionality of West Virginia Code § 3-8-1a(21). Conversely, respondent argued that petitioner met the statutory definition of a PAC, *see id.*, and was required to register as such and comply with the requirements associated therewith. The circuit court held a hearing on the motions on March 9, 2020, and by order entered April 2, 2020, it granted summary judgment to respondent, and denied petitioner's cross-motion.

Specific to the issues herein, the circuit court found that "[a] political action committee is distinct from other groups that 'influence the election or defeat' of candidates based on one feature: whether it is 'organized' for that purpose. W. Va. Code§ 3-8-la(21) (2018)[.]" (Footnote omitted). The circuit court concluded that because the word "organized" was not defined in the election

---

[4] According to petitioner, "[w]hile 501(c)(4) organizations are required to disclose certain 'electioneering communications' and 'independent expenditures,' many of the contribution disclosure requirements under West Virginia election statutes are only applicable to political action committees."

[5] This total includes the amount spent on the 2018 primary.  *See supra* text.

statute, under rules of statutory construction, it is given its "ordinary and plain meaning."[6] Relying upon the Merriam-Webster Collegiate Dictionary definition of the word "organized," the circuit court determined that it meant "having a formal organization to coordinate and carry out activities." The circuit court also determined that "[t]he Election Code expressly contemplates the possibility that an entity organized for non-electoral purposes can *also* be organized for the purpose of influencing elections." In support of this conclusion, and by way of analogy, the circuit court reasoned:

> The Election Code includes "membership organizations" as a type of political action committee. W. Va. Code § 3-8-la(21)(B) (2018). Membership organization "use[] a majority of [their] membership dues for purposes other than political purposes," W. Va. Code § 3-8-la(18) (2018). Such groups no doubt devote much of their time and organization to non-political purposes, yet the Election Code recognizes they are also "organized . . . for the purpose" of advocating for and against candidates. W. Va. Code § 3-8-la(21)(2018). Taken together, these related provisions indicate that the Legislature did not conceive of "organization . . . for [a] purpose" as mutually exclusive with organization for an additional, even wholly non-political, purpose. *See W. Va. Health Care Cost Rev. Auth. v. Boone Mem. Hosp.*, 196 W. Va. 326, 338, 472 S.E.2d 411, 423 (1996) ("It is a fundamental principle of statutory construction that the meaning of a word cannot be determined in isolation, but it must be drawn from the context in which it is."); Syl. pt. 7, *Miller v. Wood*, 229 W. Va. 545, 729 S.E.2d 867 (2012) ("[S]tatutes which have a common purpose will be regarded in para materia to assure recognition and implementation of the legislative intent." (quoting Syl. pt. 5, *S, Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975)[.]).

The circuit court then concluded that

> [i]f the Legislature had intended the Election Code to capture only political action committees organized for the 'sole purpose' of supporting or opposing candidates, then it would have included the word 'sole' as it did in other statutes. *See, e.g.*, W. Va. Code § 60-8-2 (defining a "private wine bed and breakfast" as "any business with the sole purpose of providing" lodging, meals, etc. and defining a "private wine spa" similarly)[.]

---

[6] *See* Syl. Pt. 1, *Miners in Gen. Grp. v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee-Norse Co. v. Rutledge*, 110 W. Va. 162, 291 S.E.2d 477 (1982) ("In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.").

The circuit court ultimately found that petitioner

> consistently devoted more than half of its election-year
> expenditures[7] to expressly advocating for and against candidates in
> West Virginia elections. It is staffed, directed, and supported by a
> network of communications professionals, pollsters, and
> government affairs consultants. This network works together to
> organize multifaceted multimedia campaigns advocating for and
> against multiple candidates every election year.

(Footnote added). Accordingly, the circuit court determined that petitioner "is 'organized for the purpose of supporting or opposing one or more candidates' in West Virginia elections, and it is required to register as a Political Action Committee." This appeal followed.

Petitioner raises two primary errors:[8] 1) the circuit court erred in ruling that a "political action committee" can be organized for nonelectoral purposes according to West Virginia Code § 3-8-1a(21); and 2) the circuit court erred in its evaluation of the evidence that resulted in finding that petitioner is a PAC. Because this case is before the Court on the grant of summary judgment, we apply a de novo standard of review to the alleged errors. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

At the outset, we emphasize that this case concerns only the question of whether petitioner is required to register as a "political action committee" under the 2013 statutory definition of that term, thus requiring it to complete and file versions of various transaction reports with respondent that are required of such groups. This case is *not* about either the facial constitutionality of West

---

[7] The circuit court found that for the 2016 election cycle petitioner spent or contributed more than $74,000 to advocate for or against candidates, which was more than 54% of its total expenditures during its first full year of operation. According to respondent, this amount was "nearly 45% or its expenditures across 2015 and 2016 combined."

[8] Petitioner assigned as error that the circuit court erred: 1) in ruling that it is a "political action committee" as defined in W. Va. Code § 3-8-1a(21) (2013); 2) in ruling that it was "organized for the purpose of supporting or opposing one or more candidates" under W.Va. Code § 3-8-1a(21) (2013); 3) by looking only at two select calendar years of its spending, rather than looking at the lifetime spending of the organization in determining "the purpose"; 4) by finding that it has consistently devoted more than half of its expenditures to expressly advocating for and against candidates in West Virginia elections; 5) by including four public opinion polls commissioned by petitioner in the court's calculation of petitioner's express advocacy expenditures for 2018; and 6) by failing to independently examine each of its expenses. The six assigned errors are collectively better addressed in the two primary errors set forth above, as the first assigned error is directed at the circuit court's ruling regarding the statutory definition of a PAC, *see* W. Va. Code § 3-8-1a(21), and the five remaining errors collectively attack the substance of the circuit court's ruling that petitioner is a PAC as that term is defined in the statute. *Id*.

Virginia Code § 3-8-1a(21), or whether the application of the statute to petitioner was constitutionally overbroad. Petitioner never raised any constitutional question before the circuit court. Indeed, petitioner replied to respondent's memorandum in response to petitioner's summary judgment motion, stating affirmatively that it had "not addressed the constitutionality of W. Va. Code § 3-8-1a(21) (201[3]) in its Motion for Summary Judgment or Memorandum in Opposition to Plaintiff's Motion for Summary Judgment; however, SEA does not waive this defense. SEA may assert this defense at oral argument and at trial." Petitioner did not raise any constitutional issues at oral argument before the circuit court, and there was no trial below. Accordingly, the circuit court did not make any determinations regarding the constitutionality of the statute, or its application to petitioner. Further, in this appeal from the circuit court's order, petitioner does not raise any constitutional issue as an assignment of error. *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in briefs on appeal may be deemed by this Court to be waived."). Respondent asserts that petitioner "raises constitutional arguments [in its appeal] obliquely, rather than through a direct assignment of error[.]" We agree. We therefore find that petitioner not only waived any direct constitutional challenge concerning the relevant statute, but we also decline to address any indirect constitutional arguments that petitioner makes on appeal. As we have held: "When it is not necessary in the decision of a case to determine the question of the constitutionality of a statute, this Court will not consider or determine such question." Syl. Pt. 5, *State ex rel. Titus v. Hayes*, 150 W.Va. 151, 144 S.E.2d 502 (1965); *accord* Syl. Pt. 1, *Priester v. Hawkins*, 168 W. Va. 569, 285 S.E.2d 396 (1981). It is unnecessary to address any constitutional arguments raised by petitioner because the constitutionality of the 2013 version of the statute is not likely to recur given the Legislature's amendment to the statute in 2019, and respondent's representation to the Court that "no other litigation is pending under the 201[3] definition."

The first issue concerns the 2013 statutory definition of "political action committee," which means "a committee organized by one or more persons for the purpose of supporting or opposing the nomination or election of one or more candidates." [9] W. Va. Code § 3-8-1a(21). Petitioner argues that the circuit court erred in ruling that under the statute a PAC can be organized for multiple, nonelectoral purposes. *See id.* To the contrary, petitioner contends that to be a PAC requires that candidate advocacy must be an organization's "sole, primary, or major purpose." [10]

---

[9] When an organization falls within the purview of the statutory definition of a PAC, it must register with respondent's office and periodically file a "detailed financial statement" disclosing all transactions made shortly before an election and all other transactions over $500, including all expenditures made to promote the candidacy of any person, and all contributions or loans received. *See* W. Va. Code § 3-8-5.

[10] On this issue, petitioner relies upon *Center for Individual Freedom, Inc. v. Ireland*, 613 F.Supp.2d 777 (S.D.W.Va. 2009), wherein the federal district court determined for purposes of that case that the phrase "the purpose" in West Virginia Code § 3-8-1a(21) "indicates that there is but one and only one purpose – namely, to support or oppose a candidate." 613 F.Supp.2d at 795. However, the federal district court's interpretation of a West Virginia statute is not binding on this Court. *See State ex rel. Appleby v. Recht*, 213 W. Va., 503, 510, n.4, 583 S.E.2d 800, 807 n.4 (2002) ("we note that the Fourth Circuit's interpretation of a West Virginia statute is not binding on us[.]").

We disagree. Neither party argues that the provisions of West Virginia Code § 3-8-1a(21) are ambiguous. Under our fundamental precepts of statutory construction, "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syl. Pt. 1, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983).[11] Thus, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548 V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

The circuit court correctly applied these fundamental principles in recognizing that the provisions of West Virginia Code § 3-8-1a(21) were unambiguous, and in determining that under the plain language of the statute, the word "organized" means "having a formal organization to coordinate and carry out activities." Moreover, we find no error in the circuit court's ruling that the statute "expressly contemplates the possibility that an entity organized for non-electoral purposes can *also* be organized for the purpose of influencing elections." To agree with the petitioner's position that "advocating the election or defeat of a candidate must be the sole or primary purpose of a 'political action committee,'" in order for an organization to meet the statutory definition, *see id.*, is untenable and requires the Court to read into the statute words that simply are not there. As we have previously held, "[i]t is not for this Court arbitrarily to read into . . . [a statute], that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W.Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996); *accord Lamar v. Outdoor Advert. v. W. Va. Dep't of Transp., Div. of Highways*, 228 W. Va. 68, 72, 717 S.E.2d 255, 259 (2011) (same); *Williamson v. Greene*, 200 W. Va. 421, 426, 490 S.E.2d 23, 28 (1997) (same); *see Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 133, 464 S.E.2d 771, 775 (1995) ("That is to say, every word used is presumed to have meaning and purpose, for the Legislature is thought by the courts not to have used language idly."). Further, the exact language that petitioner sought to be added to the 2013 definition of a PAC – "primary purpose" language – was added to the definition of a PAC by the 2019 Legislature. *See* W. Va. Code § 3-8-1a(28) (2019). The fact that the Legislature amended the statute by inserting the very language at issue herein undermines petitioner's claim that this language always existed within the statute by implication. *See* Syl. Pt. 2, *Butler v. Rutledge*, 174 W.Va. 752, 329 S.E.2d 118 (1985) ("'The Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended.' Syl. pt. 2, *Hall v. Baylous*, 109 W.Va. 1, 153 S.E. 293 (1930)."); *see also Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W. Va. 677, 687

---

[11] There is no uncertainty as to the legislative intent in enacting West Virginia Code § 3-8-1a(21), and the remainder of the statutes that regulate and control elections in this State. *See* W. Va. Code §§ 3-8-1 to -15. The Legislature expressly articulated its intent in West Virginia Code § 3-8-1 (stating, in part, that "disclosure of expenditures serve a substantial governmental interest in informing the electorate and preventing the corruption of the political process[,]" and "[i]n West Virginia, campaign expenditures by entities and persons who are not candidates have been increasing. Public confidence is eroded when substantial amounts of such money, the source of which is hidden or disguised, is expended. This is particularly true during the final days of a campaign.").

8

n.25, 671 S.E.2d 682, 692 n.25 (2008) ("'We have traditionally held that where a statute is amended to use different language, it is presumed that the legislature intended to change the law.'" (citation omitted)); *W. Va. Bd. of Dental Exam'rs v. Storch*, 146 W. Va. 662, 670, 122 S.E.2d 295, 300 (1961) ("'It will be presumed that the legislature, in adopting an amendment, intended to make some change in the existing law, * * *'. 82 C.J.S. Statutes § 384b(2)."). Consequently, the circuit court did not err in its determination of the statutory definition of a PAC under West Virginia Code § 3-8-1a(21) (2013).

The second issue concerns the circuit court's evaluation of the evidence, which resulted in its determination that petitioner is a PAC. In this regard, petitioner attacks the circuit court's factual findings that were based on undisputed facts, contending that the court erred: 1) in looking at only two select calendar years of its spending to determine the organization's purpose; 2) in finding that petitioner consistently devoted more than half of its expenditures to expressly advocating for and against candidates in West Virginia elections; 3) in its calculations of petitioner's express advocacy spending in 2016, which petitioner claims was based on mistaken attributions of 2015 activity; 4) by including public opinion polls in its calculation of express advocacy expenditures for 2018; and 5) by failing to independently examine each of petitioner's expenses. Conversely, respondents argue that the circuit court, relying upon its evaluation of the facts, correctly determined that petitioner was a PAC based upon the structure of petitioner's stated mission to "advocate for candidates seeking public office whose views align with the organization's priorities," the structure of the organization, and petitioner's "direct[ing] a majority of its annual expenditures towards advocating for and against candidates in West Virginia." We agree.

Petitioner's challenges amount to no more than objections to the circuit court's factual findings, and those objections are insufficient to alter our determination that the circuit court did not err, as a matter of law, in concluding that petitioner is a PAC as defined in West Virginia Code § 3-8-1a(21) (2013). Upon close examination of the objections, we find them to be unsupported by any controlling legal authority. Further, we view petitioner's challenges to be largely irrelevant because none of them have any bearing either on petitioner's organizational structure or on whether petitioner was organized for the purpose of candidate advocacy.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 14, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Tim Armstead
Justice John A. Hutchison
Justice  William R. Wooton

9

**DISSENTING**:

Justice Elizabeth D. Walker

*Shale Energy Alliance, Inc. v. Mac Warner, West Virginia Secretary of State*, 20-0270

Walker, J., dissenting:

Respectfully, I disagree with the majority's decision to affirm the circuit court's order granting summary judgment to the Secretary of State. I would find that Shale Energy Alliance, Inc. (SEA) was not a political action committee as that term was defined in West Virginia Code § 3-8-1a(21) (2013) and so would reverse the circuit court's order and remand with direction that SEA's motion for summary judgment be granted.

West Virginia Code § 3-8-1a(21) defines "political action committee" as "a committee organized by one or more persons for the purpose of supporting or opposing the nomination or election of one or more candidates." When considering the issue of whether SEA's activities[12] satisfy that definition, the circuit court stated that "[a] political action committee is distinct from other groups that 'influence the election or defeat' of candidates based on one feature: whether it is 'organized' for that purpose." The circuit court adopted this dictionary definition of the adjective, "organized": "having a formal organization to coordinate and carry out activities,"[13] and then applied it to SEA's activities. The court found that SEA was "organized for the purpose of supporting or opposing one or more candidates" because, among other findings, "[s]ince the year it was formed, SEA has described 'advocate[ing] (sic) for candidates seeking public office' as one of its 'most significant activities.'"

The majority endorses that same definition of "organized," the adjective. But, I would find that the word serves a different function in § 3-8-1a(21): it is the past tense of "organize." "Organize" is a transitive verb meaning "to form into a coherent unity or functioning whole," or "to set up an administrative structure for."[14] A transitive verb is one "indicating what action the subject exerts on the object."[15] Section 3-8-1a(21) contains those three elements: the subject ("one or more persons") exerted action ("organized") on an object ("a committee"). This

---

[12] These purposes are, generally, to (1) "raise and expend funds on public education campaigns regarding public policy issues critical to oil and natural gas development," (2) "raise and expend funds on public education campaigns regarding public policy issues critical to general business development," and (3) "advocate for candidates seeking public office whose views align with the organization's priorities."

[13] *See* Circuit Court Order at pp. 6–7 (quoting *Organized*, MERRIAM-WEBSTER COLLEGIATE DICTIONARY (11th Ed. 2003)).

[14] *Organize*, MERRIAM-WEBSTER COLLEGIATE DICTIONARY.

[15] *Transitive verb*, GARNER'S MODERN ENGLISH USAGE (4th ed. 2016).

10

distinction—"organized" as an adjective or a transitive verb[16]—is apparent when one inserts "organize," the transitive verb, into § 3-8-1a(21): "Political Action Committee means a committee for which an administrative structure has been set up by one or more persons for the purpose of supporting or opposing the nomination or election of one or more candidates."[17] Or, "Political Action Committee means a committee formed into a coherent unity or functioning whole by one or more persons for the purpose of supporting or opposing the nomination or election of one or more candidates."[18]

I also question the majority's acceptance of the circuit court's ruling, and stating that "the statute 'expressly contemplates the possibility that an entity organized for non-electoral purposes can *also* be organized for the purpose of influencing elections.'"[19] The majority supports that with the following analysis:

> To agree with [SEA's] position that "advocating the election or defeat of a candidate must be the <u>sole</u> or <u>primary</u> purpose of a 'political action committee,'" in order for an organization to meet the statutory definition, *see id.*, is untenable and requires the Court to read into the statute words that simply are not there.[20]

The majority's analysis is at odds with the plain language of § 3-8-1a(21), which, again, defines a political action committee as "a committee organized by one or more persons for *the*

---

[16] *See Mahon v. Rsch. Publ'ns, Inc.*, No. 970404079S, 1998 WL 855456, at \*3 (Conn. Super. Ct. Nov. 27, 1998) ("Treating [the] word ["secured"] as an adjective rather than a transitive verb necessarily changes its meaning, however.").

[17] Internal marks and alterations omitted.

[18] Internal marks and alterations omitted.

[19] Emphasis in circuit court order.

[20] Emphasis in SEA's brief. The majority quotes a portion of a sentence from SEA's brief. In its entirety, that sentence says, "As explained below, courts interpreting West Virginia's statute as well as similar statutes have consistently found that advocating the election or defeat of a candidate must be the <u>sole</u> or <u>primary</u> purpose of a 'political action committee.'" (Emphasis in original) SEA later cites *Center for Individual Freedom, Inc. v. Ireland*, 613 F. Supp. 2d 777 (S.D.W. Va. 2009) , in which the District Court for the Southern District of West Virginia found that, "'[t]*he* purpose," [in § 3-8-1a(21)] being without qualification, indicates that there is but one and only one purpose—namely, to support or oppose a candidate." *Id*. at 795 (emphasis in original). Later in that decision, the *Ireland* court used the words "sole" and "major" to amplify § 3-8-1a(21) when applying it to the facts presented, there. *Id*. at 797. That SEA used those words, or even "primary" does not alter the plain language of § 3-8-1a(21) or diminish the applicability of *Ireland* to this issue.

11

purpose of supporting or opposing the nomination or election of one or more candidates."[21] While the majority contends that SEA reads in "sole" or "primary," the majority effectively reads out "the."

"The" is a definite article. This Court has stated that:

> The definite article "the" particularizes the subject which it precedes: "law-enforcement officer." In other words, the statute uses the word "the" to refer to a specific law-enforcement officer. *See, e.g., Clair v. Commonwealth,* No. 2011–SC–000774–MR, 451 S.W.3d 597, 625–26, 2014 WL 4113014, at *17 (Ky.2014) ( "The use of the definite article, the word 'the,' signals a specific thing."); *Yellowbird v. N.D. Dep't of Transp.,* 833 N.W.2d 536, 539 (N.D.2013) (" '[T]he' is [a]n article which particularizes the subject spoken of. In construing [a] statute, definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to indefinite or generalizing force [of] 'a' or 'an.' " (Internal quotation and citation omitted.)); *New Iberia Firefighters Ass'n, Local 775 v. City of New Iberia,* 140 So.3d 788, 792–93 (La.Ct.App.2014) (" 'The' is a definite article, which refers to a specific person, place, or thing; whereas 'a' or 'an' are indefinite articles, which refer to people, places, or things in a general or nonspecific manner."); *In re AJR,* 300 Mich.App. 597, 834 N.W.2d 904, 907 (2013) ("[I]f the Legislature wants to refer to something particular, not general, it uses the word 'the,' rather than 'a' or 'an.'"); *cf. Maupin v. Sidiropolis,* 215 W.Va. 492, 497, 600 S.E.2d 204, 209 (2004) ( "Typically, though, 'an' is construed as making general, rather than specific, references to its words of modification.").[22]

---

[21] Emphasis added.

[22] *Dale v. Painter*, 234 W. Va. 343, 351, 765 S.E.2d 232, 240 (2014). *See also Cochise Consultancy, Inc. v. United States ex rel. Hunt*, __ U.S. __, 139 S. Ct. 1507, 1514 (2019) ("Regardless of precisely which official or officials the statute is referring to, § 3731(b)(2)'s use of the definite article 'the' suggests that Congress did not intend for any and all private relators to be considered 'the official of the United States.'") (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (explaining that the "use of the definite article ... indicates that there is generally only one" person covered)); *Largent v. Zoning Bd. of Appeals for Town of Paw Paw*, 222 W. Va. 789, 795, 671 S.E.2d 794, 800 (2008) ("The word 'the' is a definite article 'used, esp. before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article *a* or *an* [.]'") (quoting 1965 *Random House Webster's Unabridged Dictionary* (2d. Ed.1998)) (emphasis in original).

Given this authority, I do not agree with the majority's conclusion that there was "no error in the circuit court's ruling that the statute 'expressly contemplates the possibility that an entity organized for non-electoral purposes can *also* be organized for the purpose of influencing elections.'"

I also do not agree with the majority's relegation of *Center for Individual Freedom, Inc. v. Ireland* to a footnote.[23] The majority discounts the case as not binding precedent; however, it is the only case brought to the Court's attention that specifically addresses the definition of political action committee in § 3-8-1a(21). In that case, the United States District Court for the Southern District of West Virginia considered whether the definition of political action committee found in § 3-8-1a(21) was unconstitutionally vague and overbroad.[24] That entailed a close examination of the statute to determine whether "[t]he phrase '*the purpose* of supporting or opposing' . . . [was] more like '*a major purpose* to support or oppose' (which is unconstitutionally vague) or '*the major purpose* of supporting or opposing' (which is constitutional)[.]"[25] The court found that § 3-8-1a(21) was akin to the latter (the constitutionally-permissible "the major purpose"), reasoning:

> Like the Supreme Court in *Buckley* [*v. Valeo*, 424 U.S. 1, 70 (1976)], West Virginia's legislature chose the definite article to limit the word "purpose." However, West Virginia differs because it does not qualify the requisite purpose with the word "major." This difference does not make West Virginia's statute more vague or more broad; the opposite is true. Stating that an organization has one "major purpose" implies that it at least could have other, minor purposes. "The purpose," being without qualification, indicates that there is but one and only one purpose—namely, to support or oppose a candidate. Thus, by omitting "major," West Virginia's definition of a PAC more precisely identifies the scope of regulated organizations than the language found to be constitutional in *Buckley.*
>
> The Court does not arrive at this meaning by construction or interpretation. Instead, it is the plain meaning of this statute to limit its application to singular-purpose organizations. *See Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms.") . . . .

---

[23] 613 F.Supp.2d at 777.

[24] *Id*. at 792.

[25] *Id*. at 794 (emphasis in original).

13

Defendants have not argued in their briefs that WVFL's only or primary purpose is to support or oppose a candidate for state election. Furthermore, Defendant Betty Ireland, West Virginia Secretary of State, conceded at the hearing on October 14, 2008, that WVFL's sole purpose is not supporting or opposing candidates. Because there appears to be no basis to find that WVFL's sole, or even major, purpose is supporting or opposing candidates, the likelihood of success of WVFL's as-applied challenge is easily ascertained. As WVFL will be not be deemed a PAC under the constitutionally valid definition in W. Va.Code § 3–8–1a, there is little likelihood that the challenged section will be impermissibly applied to WVFL. *See Turchick v. United States,* 561 F.2d 719, 721 n. 3 (distinguishing overbreadth and as-applied challenges in First Amendment context). Accordingly, the Court **FINDS** that there is little likelihood that WVFL will succeed on the merits of its as-applied challenge to the organizational definitions in W. Va.Code § 3–8–1a.[26]

Like the Southern District of West Virginia, I would find that the word "the"—a definite article—in § 3-8-1a(21) demonstrates the Legislature's intent that a political action committee should be defined by one purpose, that of supporting or opposing the nomination or election of a particular candidate(s). So, again, I respectfully disagree with the majority's conclusion that SEA was a political action committee under § 3-8-1a(21).

Finally, I disagree with the majority that the 2019 amendment to § 3-8-1a(21) (2013) cuts against a finding that SEA was not a political action committee under the earlier version of the statute. In 2019, the Legislature amended the definition of political action committee as follows: "'Political action committee' means a committee organized by one or more persons*, the primary purpose of which is* to support or oppose the nomination or election of one or more candidates."[27] "The Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended."[28] By adding the word "primary" (meaning "of first rank, importance, or value"[29]) the Legislature communicated its intent that, post-2019 amendment, a political action committee's determinative purpose (supporting or opposing a political candidate) may be one of several—so long as supporting or opposing a political candidate is primary. That intent cannot be squared with the earlier iteration of the statute, which specified

---

[26] *Id*. at 795, 797.

[27] 102 W. Va. Acts 2019 (codified as amended at W. Va. Code § 3-8-1a(28) (2019)) (emphasis added).

[28] Syl. Pt. 2, *Hall v. Baylous,* 109 W.Va. 1, 153 S.E. 293 (1930).

[29] *Primary*, MERRIAM-WEBSTER COLLEGIATE DICTIONARY.

that a political action committee must have "the purpose" of supporting or opposing a political candidate.[30]

The majority cannot bridge that gap by inverting SEA's argument. In rejecting the import of the 2019 amendments for the breadth of the definition of "political action committee," as found in § 3-8-1a(21), the majority states that,

> the exact language that petitioner sought to be added to the 2013 definition of a PAC – "primary purpose" language – was added to the definition of a PAC by the 2019 Legislature. *See* W. Va. Code § 3-8-1a (2019). The fact that the Legislature amended the statute by inserting the very language at issue herein undermines petitioner's claim that this language always existed within the statute by implication.

I disagree with the majority's construction of SEA's argument regarding the effect of the Legislature's 2019 addition of "the primary purpose of which is" to the definition of "political action committee." Here is how SEA set forth its argument on this point in its response to the Secretary of State's motion for summary judgment:

> [t]his revision of language [in 2019] from a committee organized "*for the purpose of* supporting or opposing the nomination or election of one or more candidates" to " the primary purpose of which ..." shows that the West Virginia Legislature knew that the previous definition of PAC (which is at issue in this matter) did not encompass organizations whose primary purpose was to support or oppose the election of candidates. Yet, this is just what [the Secretary of State] argues the statute at issue does. If this was the Legislature's intent and the meaning of the statute, there would have been no need for the revision of this language at all.[31]

The logical construct of SEA's argument is this: the Legislature knew that § 3-8-1a(21) did not extend to organizations with the primary purpose—rather than "the

---

[30] Moreover, the Court must "presume[] that the legislators who drafted and passed [the statute] were familiar with all existing law, applicable to the subject matter[.]" Syl. Pt. 4, in part, *Kessel v. Monongalia Cty. Gen. Hosp. Co.*, 220 W. Va. 602, 648 S.E.2d 366 (2007) (internal quotation omitted). *Ireland* was decided ten years before the Legislature amended the definition of political action committee, so the presumption is that they knew about Ireland's treatment of the 2013 definition. This Court has applied that presumption even when federal law was applicable to the subject matter of the legislation. *Id*. at 612, 648 S.E.2d at 376 (stating that "we must presume that the Legislature knew the scope of federal antitrust law and the terms of art utilized therein at the time it enacted the WVATA and directed its construction in harmony with federal law").

[31] Emphasis in original.

purpose"—of supporting or opposing the election of particular candidates, and so added "the primary purpose of which" in 2019 to broaden the definition's reach. That argument comports with the traditional holding "that where a statute is amended to use different language, it is presumed that the legislature intended to change the law."[32]

These concerns are not pedantic. A definite article carries meaning and conveys legislative intent. *Ireland* and its consideration of "the purpose," found in § 3-8-1a(21), demonstrates this:

> Like the Supreme Court in *Buckley* [*v. Valeo*, 424 U.S. 1, 70 (1976)], West Virginia's legislature chose the definite article to limit the word "purpose." However, West Virginia differs because it does not qualify the requisite purpose with the word "major." This difference does not make West Virginia's statute more vague or more broad; the opposite is true. Stating that an organization has one "major purpose" implies that it at least could have other, minor purposes. "The purpose," being without qualification, indicates that there is but one and only one purpose—namely, to support or oppose a candidate. Thus, by omitting "major," West Virginia's definition of a PAC more precisely identifies the scope of regulated organizations than the language found to be constitutional in *Buckley*.[33]

I would not discount the precise language used by the Legislature in § 3-8-1a(21). For these reasons, I respectfully dissent.

---

[32] *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W. Va. 677, 687 n.25, 671 S.E.2d 682, 692 n.25 (2008) (quotation omitted).

[33] *Ireland*, 613 F.Supp.2d at 795 (emphasis added).